Goddard and Goddard Company v. Commissioner.
Goddard & Goddard Co. v. Commissioner
Docket Nos. 19753, 21492.
United States Tax Court
1950 Tax Ct. Memo LEXIS 113; 9 T.C.M. (CCH) 722; T.C.M. (RIA) 50209; August 30, 1950
*113 Robert J. Bird, Esq., and H. A. Mihills, C.P.A., 917 Munsey Bldg., Washington, D.C., for the petitioner. A. J. Friedman, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: Declared value
Doc.
Income
excess-
Excess
No.
Year
tax
profits tax
profits tax
19753
1940
$ 390.94
$111.36
$ 951.59
1941
20,508.47
102,185.11
1942
152,478.07
21492
1943
105,441.00
1945
3,312.96 The petitioner assigns as error the action of the Commissioner in disallowing a part of the deductions taken for salaries. The year 1944 is mentioned because of an alleged carry-back. The Commissioner filed an amended answer claiming increased deficiencies on the ground that he should have disallowed a larger part of the deductions claimed for salaries. Findings of Fact The petitioner is a corporation. Its returns for the periods here in question were filed with the collector of internal revenue for the district of Michigan. The petitioner was organized in 1917 by A. N. Goddard and an associate whose interest Goddard purchased in that same year. It *114 has been engaged, and was engaged at all times material hereto, in designing and manufacturing metal cutting tools, most of which are furnished on special orders. These tools require a great deal of supervision, direction, inspection, and skill in their design and manufacture. The petitioner was engaged during the years 1940 to 1945 in designing and manufacturing tools for use in the war effort. Its employees increased from 149 in 1939 to a high of 490 in 1943, and the total hours worked in the plant increased from 248,203 in 1939 to a high of 1,753,848 in 1942. The number of its substantial customers and the number of purchase orders increased correspondingly. The plant went on continuous operation 24 hours, 7 days a week, at the end of 1941 and continued on that schedule until late in 1944. A majority of the common stock of the petitioner at all times material hereto was owned by A. N. Goddard, his wife, and their four children. Chester S. Goddard, a nephew of A. N. Goddard, Ernest E. Anderson, Howard Hagerty, and William H. Fritz owned about 40 per cent or less of the common stock of the petitioner during the taxable years. All, except Fritz were directors during the taxable years. *115 A. N. Goddard, C. S. Goddard, and Hagerty owned a few shares of the petitioner's preferred stock during some or all of the taxable years. The net sales of the petitioner for the period 1927 through 1939 ranged from a low of about $169,000 in 1932 to a high of about $1,225,000 in 1937. Its taxable income, before deducting compensation for its five executives, ranged during that period from a loss of about $39,000 in 1932 to a profit of about $274,000 in 1929. It did not pay any dividends on the preferred shares during four of those years and in the other years paid dividends ranging from a low of $1,336.80 in 1929 to a high of $5,076 in 1935. It did not pay dividends on its common stock during six of those years and the dividends paid in the other years ranged from a low of $4,000 in 1930 to a high of $79,150 in 1937 of which $54,700 was paid in shares of common stock in accordance with options exercised by shareholders. The following table shows similar figures for the years here involved: Taxable income before
Dividend payments
deducting compensation
Year
Net sales
to five executives
Preferred
Common
1940
$1,463,944.25
$ 298,806.19
$1,464.00
$16,250.00
1941
3,758,404.32
1,096,784.58
1,759.00
24,375.00
1942
6,486,836.33
* 1,872,828.50
2,323.56
32,500.00
1943
5,634,433.99
* 1,089,666.84
2,328.00
32,500.00
1944
3,570,376.72
148,576.50
3,358.00
28,105.00
1945
2,732,841.60
108,593.06
6,670.14
*116 The compensation paid to A. N. Goddard during the years 1927 through 1939 ranged from a low of $5,144.50 in 1933 to a high of $38,772.65 in 1929. The salaries of Hagerty, C. S. Goddard, and Anderson, which were identical for any year, ranged during that period from a low of $3,700 in 1933 to a high of $16,524.23 in 1929. Fritz's salary during that period ranged from a low of $2,500 in 1933 to a high of $10,740 in 1937. A. N. Goddard was president, Hagerty was secretary and treasurer in charge of administration, C. S. Goddard was sales manager, Anderson was works manager, and Fritz, the plant superintendent, was his principal assistant during the period involved herein. Each of those men had been with the petitioner approximately 20 years prior to 1940. They constituted the executive and managerial force of the petitioner at all times material hereto. Each was well trained and experienced in his duties with the petitioner. The Board of Directors of the petitioner adopted a resolution on February 16, 1924, providing that in addition to regular salaries, *117 additional compensation equal to a percentage of net sales would be paid from January 1, 1924, as follows: A. N. Goddard 1 1/2 per cent; Hagerty, Anderson, and C. S. Goddard 1/2 per cent each. The bonus was not paid during some years because of business conditions. Anderson submitted his resignation prior to June 1, 1939 because he felt disatisfied with the arangement under which he was employed and because of some criticism of his work. Hagerty and C. S. Goddard, who were also somewhat concerned about the existing arrangements for their employment, and A. N. Goddard felt it was important to have Anderson remain with the petitioner. He refused to return until a five-year contract of employment was offered him. The contract, dated June 1, 1939, also included Hagerty and C. S. Goddard. It provided that each was employed for a period of five years or longer, beginning June 1, 1939 at a salary equal to 1 1/2 per cent of net sales. This agreement and another relating to a minimum purchase price for their stock, should they separate from the company, were ratified by the Board of Directors on September 1, 1939. The salaries for a while were somewhat less under the new arrangement than *118 they had been under the old one. The Board of Directors, at a meeting on July 15, 1940, fixed the salary of A. N. Goddard beginning July 1, 1940 at $30,000 per year, and on November 25, 1940 fixed his compensation beginning January 1, 1941 at 2 1/2 per cent of net sales. Hagerty, at some time prior to August 25, 1942, suggested that he, Anderson, and C. S. Goddard place a ceiling on the compensation due them under the contract dated June 1, 1939. Anderson and Goddard at first did not agree but later they agreed to a limitation of $60,000 per year for the duration of the war. A. N. Goddard, when he learned of this, voluntarily agreed to place a limitation of $75,000 a year on his compensation for the duration of the war. These limitations were approved at a meeting of the directors on August 25, 1942, at which it was resolved to place an appropriate rider on the contract of June 1, 1939, the change to become effective in 1942. The following table shows the total compensation paid and claimed on the returns as a deduction and the amount allowed by the Commissioner in determining the deficiencies, and also the amount allowed in the Revenue Agent's report in determining that the *119 petitioner had a loss of $9,211.83 for 1944 instead of a larger loss shown on the return: 1940
1941
1942
Claimed
Allowed
Claimed
Allowed
Claimed
Allowed
A.N. Goddard
$27,499.98
$27,499.98
$93,971.70
$34,000.00
$74,551.69
$36,000.00
H. Hagerty
22,094.77
17,500.00
56,356.58
20,000.00
60,000.00
20,000.00
C.S. Goddard
22,094.77
17,500.00
56,356.58
20,000.00
60,000.00
20,000.00
E.E. Anderson
22,094.77
17,500.00
56,356.58
20,000.00
60,000.00
20,000.00
W.H. Fritz
9,000.00
9,000.00
20,100.00
20,000.00
30,000.00
20,000.00
1943
1944
1945
Claimed
Allowed
Claimed
Allowed
Claimed
Allowed
A.N. Goddard
$74,551.69
$36,000.00
$74,551.69
$36,000.00
$25,150.00
$25,150.00
H. Hagerty
60,000.00
20,000.00
49,172.09
20,000.00
32,045.80
20,000.00
**
C.S. Goddard
60,000.00
60,000.00
49,172.09
49,172.09
24,173,77
24,183.77
E.E. Anderson
60,000.00
60,000.00
* 24,866.24
24,866.24
W.H. Fritz
30,000.00
30,000.00
27,750.00
27,750.00
19,000.00
19,000.00
The Commissioner, in *120 the notice of deficiency at Docket Number 19753, explained that a part of the amount claimed as a deduction based upon compensation of officers for each of the years 1940, 1941, and 1942 had been disallowed because the deductions were excessive in amounts. He gave no explanation in his notice of deficiency at Docket No. 21492, but stated therein that careful consideration had been given to the Revenue Agent's report dated March 8, 1948 "which report is incorporated herein by reference." That report contained a schedule showing deductions claimed and amounts allowed for several officers for the years 1943 through 1946. It gave no further explanation. A reasonable allowance for salaries or other compensation for personal services actually rendered to the petitioner by A. N. Goddard, Hagerty, C. S. Goddard, Anderson and Fritz for the years 1940 through 1945, in so far as their compensation is in issue herein, were the amounts actually paid to those men during those years, with the exception that a reasonable allowance for salaries or other compensation for personal services actually rendered to the petitioner by A. N. Goddard during 1941 was $75,000. The stipulation of facts is incorporated *121 herein by this reference. Opinion MURDOCK, Judge: The question herein relates to reasonable allowances for compensation of the five principal executives of the petitioner. The decision in such a case is in the nature of a jury verdrict and requires a finding of fact. A finding has been made based upon careful consideration of all of the evidence. Discussion of the reasons which prompted the Court to arrive at its conclusion is of doubtful value and no effort will be made to give a complete discussion of all of the evidence. Furthermore, it may not be inferred from the fact that some of the evidence has been discussed that the rest of it has not been carefully considered. The two Goddards, Hagerty, and Anderson, or some of them at least, apparently became embarrassed, self-conscious, or patriotic about the size of the salaries which they would receive for 1942, and the conclusion was reached that their salaries should not exceed $75,000 for A. N. Goddard and $60,000 for the other three for the duration of the war. Actually, A. N. Goddard had received $93,971.70 for 1941 and the evidence indicates that that was in excess of a reasonable allowance for salaries or other compensation *122 for that year for personal services actually rendered by him either in that year alone or in that year with due regard for services previously rendered. He stated, on at least one occasion, that he thought it was too high. The conclusion has been reached that $75,000 would be a more appropriate amount to be deducted for his salary for 1941. Otherwise, little can be said for the Commissioner's case. His determinations were, so far as this record shows, arbitrary and inconsistent. He allowed $60,000 for C. S. Goddard and Anderson for 1943 but refused to allow the same amount claimed for 1942, the best year in the history of the petitioner. The sales for 1941 were higher than for 1944, yet he allowed the full amount claimed for those two men for 1944 but allowed much smaller amounts for 1941. He allowed the same deduction for the salary of those two men as he allowed for Hagerty for some years, but for 1943 and 1944 he allowed larger amounts for them than he allowed for Hagerty. All three of these men were paid equally pursuant to an employment contract entered into prior to the time when the petitioner began to feel the impulse of the war. There was no lack of bona fides in connection *123 with that contract. It turned out that the compensation under the contract was substantially more than the parties had anticipated, but the evidence indicates that these three men, all of whom were extremely valuable to the petitioner and all of whom worked extra hard during these years when the business of the petitioner multiplied rapidly, were worth the amounts actually paid to them. There was no justification for the action of the Commissioner in disallowing a small amount of their compensation for 1940. Their high salaries came in the next three years, but for 1943 the Commissioner allowed the full amount claimed for Goddard and Anderson, thus recognizing that they could be worth as much as $60,000. There is testimony that their services were worth as much as $60,000. The Commissioner allowed the full amount paid Fritz for 1940, 1943, 1944, and 1945. He disallowed $100 of the amount paid in 1941 and $10,000 of the amount paid in 1942. These alone of his compensations are in controversy. The Commissioner offers no satisfactory explanation for this action and the evidence indicates that there was none. There is testimony that he was worth what was paid to him. It seems obvious *124 that if Fritz was worth $30,000 in 1943 and $27,750 in 1944, he was worth $30,000 in 1942, the best year, and $20,100 rather than $20,000 in 1941. There was no reason for the petitioner to pay him more than he was worth. His stockholdings were trivial and he had no hold on the corporation except as his ability gave it to him. There is evidence that A. N. Goddard was worth as much as $75,000 to the petitioner, at least in years in which it had the business to justify the employment of such a person. He was regarded as more valuable to the petitioner than was any one of the other three top employees, yet the Commissioner has recognized that a reasonable salary for two of those employees for 1943 was $60,000 and those employees themselves thought that a reasonable salary for A. N. Goddard for any year should exceed the salary which they were to receive. Incidentally, the Commissioner called no witnesses of his own and apparently expects this Court to hold with him from statistics in regard to earnings and dividends. But whatever it is he relies upon, there is other evidence which preponderates in the petitioner's favor, except in the one instance above noted. Counsel for the Commissioner *125 received permission at the hearing to file an amended answer claiming an increased deficiency and even claiming a deficiency for 1944, as to which year the Court has no jurisdiction because no deficiency was determined for that year. It is difficult, if not impossible, to find any support in the record for the contentions made in this amended answer. Certainly the Commissioner has failed to carry his burden of proof in regard to his contentions made in that amended answer. Decision will be entered under Rule 50. Footnotes
*. Before deducting renegotiation refund and net operating loss deduction. ↩
*. Before deducting renegotiation refund.↩
**. Resigned August 1, 1945.↩
*. Resigned June 1, 1944. ↩